IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SHAWN MONTEGIO )
)
vs. ) C.A. No. 06-150S
)
UNITED STATES OF AMERICA )

**GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION TO REINSTATE DIRECT APPEAL RIGHT AND TO RESOLVE OR PRESERVE COLLATERAL CLAIMS UNDER THE AEDPA PURSUANT TO 28 U.S.C. § 2255**

Comes now the United States of America, by and through its Attorneys, Robert Clark Corrente, United States Attorney, and Kenneth P. Madden, First Assistant U. S. Attorney, and objects to the Motion To Reinstate Direct Appeal Right And To Resolve Or Preserve Collateral Claims Under The AEDPA Pursuant To 28 U.S.C. § 2255 for those reason stated in the accompanying memorandum.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Kenneth P. Madden

Kenneth P. Madden
First Assistant U.S. Attorney
R. I. Bar # 1680

CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of May 2006, I served a copy of the within Government's Objection to Defendant's Motion, ordinary mail, postage prepaid, to:

Shawn Montegio
Reg. No. 05264-070
FCC Medium, B-1
P.O. Box 1032
Coleman, FL 33521-1032

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SHAWN MONTEGIO )
)
vs. ) C.A. No. 06-150S
)
UNITED STATES OF AMERICA )

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT'S MOTION TO REINSTATE DIRECT APPEAL RIGHT AND TO RESOLVE OR PRESERVE COLLATERAL CLAIMS UNDER THE AEDPA PURSUANT TO 28 U.S.C. § 2255**

## I. INTRODUCTION

The Petitioner, Shawn Montegio (Montegio), files this motion pursuant to 28 U.S.C. § 2255. In his motion, Montegio makes multiple claims which can be summarized as follows.

1. Counsel failed to file a notice of appeal.

2. Montegio's plea was not voluntarily and intelligently made because counsel failed to negotiate a conditional plea.

3. The government breached the plea agreement.

4. The government's breach of the plea agreement rendered Montegio's plea involuntary.

5. The District Court erred in determining Montegio was responsible for between 15 and 50 kilograms of cocaine.

6. The Guidelines adjustment for role in the offense violated the plea agreement and plea colloquy.

7. Montegio's sentence violated United States v. Booker, 543 U.S. 220 (2005).

## II. TRAVEL AND FACTS

Acting upon Court-authorized wiretap intercepts and law enforcement observations, on February 9, 2003, federal agents entered the home of Shawn Montegio at 45 Claremont Street, Central Falls. Following the issuance of a search warrant, federal agents seized nearly nine kilograms of cocaine, a pistol, $115,000 in cash, and other items. Agents arrested Montegio and two other men. A federal grand jury subsequently indicted Montegio and the others. Montegio was charged in four counts: 1) on or about February 9, 2003, conspiring with Francisco Bermudez and Gonzola Velasquez[1] to distribute and to possess with intent to distribute over five kilograms of cocaine, in violation of 21 U.S.C. § 846; 2) on or about February 9, 2003, along with Bermudez and Velasquez, possessing with intent to distribute over five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) and 18 U.S.C. § 2; 3) on or about February 9, 2003, possessing a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g); and 4) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Montegio filed pretrial motions, including a motion for a Franks hearing on the wiretap affidavits and a motion to suppress both the evidence seized from Montegio's apartment and oral

---

[1] Bermudez pleaded guilty. Velasquez was acquitted after trial.

statements made by Montegio on grounds that the agents did not have a search warrant nor an arrest warrant when they first entered Montegio's apartment. An evidentiary hearing was held. On July 25, 2003, the Court denied the motion for a Franks hearing and denied the motion to suppress. On August 6, 2003, Montegio signed a plea agreement. He pled guilty to all counts on August 11, 2003.

Sentencing was scheduled for October 31, 2003. The probation officer prepared a presentence report (PSR). As set forth in the PSR, the government, consistent with its obligations to the Court and not in violation of any terms of the plea agreement, advised the probation officer of not only the activities at 45 Claremont Street on February 8 and 9, 2003, but also of the seizure of $198,700 in United States currency from the home of Jessica Olivares at 53 Fales Street, Central Falls, and the seizure of 2.79 kilograms of cocaine from the home of Carlos Villegas, a runner/associate of Montegio.

The probation officer calculated a guidelines range for Montegio based upon 11.744 kilograms of cocaine[2] and the conversion of $313,700 in cash to 14.259 kilograms of cocaine at a schedule of $22,000 per kilogram. The base offense level was determined to be 34. The offense level was reduced by two levels for acceptance of responsibility, resulting in a total offense

[2] 8.954 kilograms seized from Claremont Street plus 2.79 kilograms seized from Villegas.

level of 32, Criminal History Category III. The sentencing range was 151-188 months imprisonment plus a minimum consecutive sentence of sixty months.

On October 31, 2003, after the Court took the bench, the Court advised counsel that the Court wished to hear from counsel on the applicability of a possible four-level increase for role in the offense. Both the government and defense counsel asked for time to submit memoranda of law. In its memorandum, the government argued that a four-level increase for role in the offense applied.

In January 2004, the probation officer produced a revised PSR. The revised PSR recommended a four-level increase for role in the offense, raising the total offense level to 36. That offense level at Criminal History Category III resulted in a sentencing range of 235-293 months plus a minimum consecutive sentence of sixty months. In January 2004, the government filed a memorandum opposing a motion filed by Montegio requesting a downward departure. On March 25, 2004, the matter was further continued for sentencing. The government recalls that there was much speculation at the time as to when the Supreme Court might decide Blakely v. Washington, 542 U. S. 296 (2004) and what impact the case might have on the federal sentencing guidelines. On July 12, 2004, the Court ordered the parties to brief eight specific questions concerning the applicability of Blakely to

Montegio's case. The applicability of Blakely to Montegio became moot after the Supreme Court decided United States v. Booker, supra, on January 12, 2005.

On April 4, 2005, the Court heard arguments as to what guidelines range applied to Montegio and on various objections to the PSR. On April 8, 2005, the Court rendered its decision and imposed sentence. In sum, the Court ruled that the $198,700 seized from Fales Street represented relevant conduct; the cocaine seized from Villegas's home should not be counted against Montegio; an increase of two levels, not four, for role in the offense applied; and a downward departure was not appropriate. The resulting guideline range was 188-235 months. Mindful of its discretion under Booker, the Court imposed a low-end guidelines sentence of 188 months plus a sixty month consecutive sentence for a total of 248 months imprisonment, five years supervised release and a $400 special assessment.

## III. THE LAW OF SECTION 2255 MOTIONS

Section 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion under 28 U.S.C. § 2255 is a substitute for habeas corpus. Relief is available under this section only if the same relief is available under the writ. Hill v. United States, 368 U.S. 424, 427 (1962). The grounds justifying relief under § 2255 are limited. Section 2255 does not grant to a defendant the right to retry cases in which he has been adjudged guilty. Taylor v. United States, 177 F.2d 194, 195 (4th Cir. 1949).

In United States v. Addonizio, 442 U.S. 178, 184-85 (1979), the Supreme Court stated:

> It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment . . . [U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited . . . The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted "a fundamental defect which inherently results in a complete miscarriage of justice". . . Similar limitations apply with respect to claimed errors of fact.

See also, Davis v. United States, 417 U.S. 333, 346 (1974).

A collateral attack may not do service for an appeal. United States v. Frady, 456 U.S. 152, 165 (1982); Dirring v. United States, 370 F.2d 862, 865 (1st Cir. 1967). To obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on a direct appeal.

The standard of review of a § 2255 motion for alleged trial errors to which no contemporaneous objection was made is not the plain error standard, but the cause and actual prejudice

standard. Frady, 456 U.S. at 166-67. A defendant cannot raise in a federal habeas proceeding issues which he failed to raise at trial or on direct appeal absent a showing of cause for the failure and a showing of prejudice. Prou v. United States, 199 F.3d 37, 47 (1st Cir. 1999); Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

Section 2255 provides that the Court, after receiving said motion, should hold a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Rule 4 of the Rules Governing Proceedings in the United States District Courts Under § 2255 provides in pertinent part that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." The burden is on the movant to prove by a preponderance of the evidence that he is entitled to a hearing. Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989).

The First Circuit has stated that no hearing is required where the § 2255 motion: "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974). See also, United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989).

Moreover, the First Circuit has also held that "no hearing is required where the district judge is thoroughly familiar with the case." Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988). See also, Panzardi-Alvarez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1989). A District Judge's personal observation and recollection of the events at trial may supplement the record. Gregory v. United States, 585 F.2d 548, 550 n.1 (1st Cir. 1978); United States v. DiCarlo, 575 F.2d 952, 954-55 (1st Cir. 1978). In considering a motion under § 2255, the District Court should accept the movant's allegations as true "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than facts." United States v. Mosquera, 845 F.2d 1122, 1124 (1st Cir. 1988).

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

The two-part test for evaluating ineffective assistance of counsel claims was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-688 (1984). A defendant must show both: 1) that his attorney's performance fell below an objective standard of reasonableness; and 2) that he was prejudiced as a result of his attorney's deficient performance. Id.; Mathews v. Rakiey, 54 F.3d 908, 916 (1st Cir. 1995); Scarpa v. Dubois, 38 F.3d 1, 8-9 (1st Cir. 1994); United States v. Caggiano, 899 F.2d 99, 101 (1st Cir. 1990). The defendant's burden is by a preponderance of the evidence.

With regard to the first element, "[c]ounsel's judgment is subject to highly deferential review," United States v. Gomes, 177 F.3d 76, 83 (1st Cir. 1999), and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. The defendant must establish that counsel's performance was not within the wide range of reasonable professional assistance. Singleton v. United States, 26 F.3d 233, 238 (1st Cir. 1994). The Court should indulge a "'strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'" Singleton, 26 F.3d at 238 (quoting Strickland, 466 U.S. at 689); See also Scarpa, 38 F.3d at 8.

Prejudice exists when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Gonzalez-Soberal v. United States, 244 F.3d 273 (1st Cir. 2001).

Strickland applies not only to trials, but to guilty plea challenges. Under the first prong, the defendant must show that his counseled guilty plea was based on advice which is outside the range of competence demanded of attorneys in criminal cases. To establish prejudice, the defendant must show that there is a reasonable probability that but for counsel's errors, he would

not have pled guilty and would have insisted on proceeding to trial. Lopez-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990).

Moreover, even if a defendant is able to show that counsel's error affected the outcome of his case, he is not necessarily entitled to reversal. The Supreme Court has made clear that a prejudice analysis "focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). A Court should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." Id. at 369-70. Rather, reversal is warranted only if a court also concludes that the result of the trial was "fundamentally unfair or unreliable." Id. at 369; accord Tejeda v. DuBois, 142 F.3d 18, 22 (1st Cir. 1998); Carey v. United States, 50 F.3d 1097, 1101 (1st Cir. 1995); Scarpa, 38 F.3d at 16; Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993).

Counsel need not jump through every conceivable hoop, nor engage in futile exercise, in order to be considered effective. Singleton, 26 F.3d at 239; United States v. Cronic, 466 U.S. 648, 656 n. 19 (1984).

V. ISSUES

1. Failure to file a notice of appeal

Montegio argues that his counsel failed to file a notice of appeal. An attorney who disregards a defendant's specific instructions to file a notice of appeal has acted in a manner that is professionally unreasonable. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). The loss of the right to appeal resulting from the ineffective assistance of counsel can, in the appropriate case, be remedied through a motion brought pursuant to 28 U.S.C. § 2255. United States v. Tajeddini, 945 F.2d 458, 466 (1st Cir. 1991); Lopez-Torres v. United States, 876 F.2d 4, 5 (1st Cir. 1989). An unrepresented, indigent prisoner, deprived of his direct criminal appeal through ineffective assistance of counsel, need not specify what issues he would raise on appeal. Rodriquez v. United States, 395 U.S. 327, 330 (1969); Bonneau v. United States, 961 F.2d 17, 23 (1st Cir. 1992); Tajeddini, 945 F.2d at 468 n.2. The remedy for a defendant who has lost the right to appeal due to the ineffective assistance of counsel is for the defendant to be resentenced so that an appeal may be prosecuted. Bonneau, 961 F.2d at 23. An evidentiary hearing should be held to determine whether Montegio directed his counsel to file a notice of appeal.

2. Ineffective Assistance Of Counsel And A Conditional Plea

Montegio argues that his counsel was ineffective for failing to negotiate a conditional plea which would have preserved the right to have the Court of Appeals review the adverse determination of any specified pre-trial motions.

Rule 11(a)(2) of the F.R.Crim.P. states as follows:

> **(2) Conditional Plea.** With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pre-trial motion. A defendant who prevails on appeal may then withdraw the plea.

Various circuits are clear that a defendant has no right to enter a conditional plea of guilty. United States v. Bell, 966 F.2d 914, 916 (5th Cir. 1992); United States v. Muldoon, 931 F.2d 282, 288 (4th Cir. 1991); United States v. Davis, 900 F.2d 1524, 1526-28 (10th Cir. 1990). Further, prosecutors are under no obligation to offer a plea agreement. United States v. Hall, 212 F.3d 1016, 1022 (7th Cir. 2000).

Montegio's argument fails both prongs of the ineffective assistance test. In analyzing the first element, the Court must consider that Mr. Bevilacqua is a respected member of the criminal defense bar with approximately thirty years experience defending those charged with felony offenses in both federal and state courts. It was Mr. Bevilacqua's belief that the Judges of

This Court express little, if any, willingness to accept conditional guilty pleas.[3] In addition, as noted in Hall, supra, factors such as the consent of the Court and the government were beyond the ability of defense counsel to control. Mr. Bevilacqua was not required to engage in a futile exercise.

Montegio fares no better with the prejudice element. Montegio fails to demonstrate that had the Court accepted a conditional guilty plea preserving for appellate review the denial of Montegio's motions for a Franks hearing and to suppress evidence seized from his home, he would have been successful on appeal. He does not establish that the facts adduced at the motions hearing fail to support the Court's decisions or that the decisions were otherwise legally unsound.

Montegio does supply two pages termed "Adverse Fact Finding." Montegio's Motion, pp. 22-23. In those two pages, Montegio grounds his argument on "facts" and conclusions completely at odds with the record of the motions hearing. The Court heard testimony from agents as to what evidence they had gathered up to February 9, 2003, their observations and telephone intercepts on February 9,2003, their thought processes, the actions they took, and the reasoning behind those actions. After hearing the evidence and argument, the Court rejected the

[3] The undersigned AUSA, who has over twenty years experience as a federal prosecutor, holds the same belief.

government's exigent circumstances argument, but accepted the government's arguments on inevitable discovery and the problems with applying for an anticipatory search warrant. In his two pages, Montegio never makes a case that the result would have been different.

Further, Montegio fails to point to anything indicating that the government would have consented to the entry of a conditional guilty plea. See, e.g., Burger v. Kemp, 483 U.S. 776, 785 (1987) (failure to obtain a plea agreement is not evidence of ineffective assistance of counsel where the record contains no evidence that the prosecutor would have offered one). He also fails to show that the Court would have accepted such a plea.

Montegio does not establish prejudice. This ground should be rejected.

3. The Breach Of The Plea Agreement

Montegio argues that the government breached the "binding" plea agreement in that the "stipulated plea agreement facts" differ from those facts set forth in the Prosecution Version of the PSR and argued by the government at sentencing. Specifically, Montegio points to those facts argued by the government concerning the quantity of cocaine, the cash seized during the investigation, and his role in the offense.

The seven-page plea agreement signed by Montegio on August 6, 2003 was filed with the Court that same day. Montegio entered

his guilty plea on August 11, 2003. The essential terms of the agreement may be summarized as follows:

1) Montegio agreed to plead guilty to the four counts of the indictment. (P/A, ¶ 1).

2) The government agreed to recommend the minimum term of imprisonment under the applicable guideline range, or the mandatory minimum sentence by statute, whichever was greater, as well as a five year consecutive sentence on Count IV. (P/A, ¶ 2).

3) The government agreed to recommend a two-level decrease for acceptance of responsibility. (P/A, ¶ 2).

4) The government could recommend any fine, restitution or term of supervised release. (P/A, ¶ 2).

5) The government agreed not to file a sentencing enhancement information. (P/A, ¶ 2).

6) ***Montegio*** agreed that the actual substance involved in Counts I and II was cocaine and that the total weight of the cocaine was 8954.06 grams. (Emphasis added) (P/A, ¶ 3).

7) ***Montegio*** understood that his guideline range would be determined, ***in part***, upon the quantity of cocaine involved in his case ***and seized United States currency***. (Emphasis added) (P/A, ¶ 3).

8) The statutory minimum and maximum sentences (10 years to life) were recited, correctly. (P/A, ¶ 4).

9) The government reserved the right to present any information to the Court for its consideration in fashioning an appropriate sentence and to answer any questions asked by the Court. (P/A, ¶ 7).

10) Except for the terms listed in paragraphs 2-7 above, Montegio and the government made no agreement concerning the application of the guidelines. (P/A, ¶ 8).

11) The Court was not bound by the government's recommendations and could impose any sentence up to and including the statutory maximums. (P/A, ¶ 9).

The plea agreement neither contained, nor had appended to it, any stipulated set of facts. At the change of plea hearing on August 11, 2003, the Court asked the government to recite "the facts that the Government would be prepared to prove if this matter would go to trial." (T. 8/11/2003, p. 14). The government set forth those facts it would prove had the case proceeded to trial. (T. 8/11/2003, pp. 16-20). Those facts were limited to the seizure of the cash, cocaine, firearm and other items from 45 Claremont Street, Central Falls on February 9, 2003, the exact date charged in the indictment.

Plea agreements are interpreted under the general principles of contract law, United States v. Bermudez, 407 F.3d 536, 540 (1st Cir. 2005), United States v. Garcia, 954 F.2d 12, 17 (1st Cir. 1992), insofar as they are relevant in determining

what the government "owes" to the defendant. United States v. Giorgi, 840 F.2d 1022, 1026 (1st Cir. 1988). The Court should look to the language of the agreement "squarely within its four corners." United States v. Anderson, 921 F.2d 335, 337-38 (1st Cir. 1990).

Contrary to Montegio's characterization, the plea agreement in this case was not a "binding" plea agreement as that term is commonly used in pleas. Though the government and Montegio were bound to fulfill to each other the commitments made in the agreement, the Court was not bound by the agreements of the parties. The Court was not bound by the government's promises; not bound by Montegio's promises; and could impose any sentence up to the statutory maximums. (T. 8/11/2003, pp. 5-6).

Further, the agreement did not bind the government to advocate that relevant conduct would be determined solely upon the $115,000 seized from Montegio's apartment, and no other cash amount. The agreement stated that Montegio's guideline range would "be determined, in part, upon . . . seized United States currency." (T. 8/11/2003, p. 6-7). No dollar amount was stated, and the factual basis for the plea given at the change of plea hearing was not incorporated into the plea agreement such that it bound the government to advocate only that dollar amount at sentencing.

Likewise, the government did not bind itself in the agreement to advocate that Montegio's sentence should be based only upon the 8954.06 grams of cocaine seized from his home. In fact, the government reserved the right to present to the Court any information for consideration by the Court in fashioning a sentence. (P/A ¶7). More importantly, at sentencing, the Court ruled that only the cocaine quantity seized from Montegio's home would be counted against him. The Court specifically discounted the 2.79 kilograms of cocaine seized from Villegas' apartment. There is no prejudice to Montegio.

With regard to role in the offense, the plea agreement is absolutely silent. The government did not commit itself to take a position that a guidelines increase for role was inapplicable, nor did the government commit that it would take "no position" should the issue arise. Further, the government did not raise the issue with the Court. It was the Court which *sua sponte* raised the issue of role. The Court had the right to do so, and under the plea agreement, the government had the right and obligation to answer questions posed by the Court. The government did exactly that.

This ground should be rejected.

4. The Involuntariness of the Guilty Plea

Montegio argues that his plea was involuntary. He states that had he known that the government would advocate for, and the Court accept, facts not mentioned during the plea colloquy, he would not have entered a guilty plea and would have proceeded to trial. In part he relies on USSG § 1B1.2(a); Braxton v. United States, 500 U.S. 344 (1991); and United States v. Casey, 158 F.3d 993 (8th Cir. 1998).

In a collateral attack upon a guilty plea, the defendant must show that "the error(s) resulted in a total miscarriage of justice or in a proceeding so tainted as to be inconsistent with the basic requirements of fundamental fairness." Sparfven v. United States, 577 F.Supp. 1430, 1432-33 (D.R.I. 1984). A defendant's plea must be knowing, voluntary and intelligent, and the Rule 11 colloquy must address three "core concerns": 1) the absence of coercion; 2) the defendant's understanding of the charges against him; and 3) the defendant's knowledge of the consequences of his plea of guilty. United States v. Bierd, 217 F.3d 15, 18-19 (1st Cir. 2000).

In the instant case, the Court fully addressed the core concerns of Rule 11. Montegio confirmed that no promises or assurances had been made to him, other than those stated in the plea agreement, and that no one had attempted to force him to plead guilty. (T. 8/11/2003, p. 7). The charges and the elements

that the government would have had to prove were explained to Montegio. (T. 8/11/2003, pp. 4, 14-16, 20). Montegio even described his crimes in his own words, stating "I possessed nine kilos of cocaine and a firearm." (T. 8/11/2003, p. 14). Montegio was advised of the penalties for each offense and the loss of certain civil rights. (T. 8/11/2003, pp. 8-10). He was advised of the operation of the Sentencing Guidelines. (T. 8/11/2003, pp. 10-12). In particular, the Court advised Montegio that the terms of the plea agreement were not binding on the Court and that the Court could impose a sentence more severe than Montegio anticipated. (T. 8/11/2003, p. 8). Montegio was also advised of the various constitutional rights he was waiving as a result of the guilty plea. (T. 8/11/2003, pp. 12-14).

Montegio's reliance on USSG § 1B1.2, Braxton v. United States, supra, and United States v. Casey, supra, is erroneous. Section 1B1.2, in part, directs that the offense guideline to be applied to a defendant is the one applicable to the offense of conviction. That section also directs that where a plea agreement contains a stipulation to a more serious offense than the offense of conviction, the offense guideline for the more serious offense, not the guideline for the offense of conviction, should be applied. Neither Braxton nor Casey contravene this view.

However, contrary to Montegio's assertion, his guideline range was not determined on the basis of the application of an offense guideline for a more serious offense. His guideline range was determined under USSG §§ 2D1.1, 2K2.1 and 2K2.4. These are the offense guidelines which apply to the offenses of conviction, not to more serious offenses. Montegio confuses USSG § 1B1.2 with the proper application in Montegio's case of USSG § 1B1.3, the Relevant Conduct section.[4]

Further, Montegio cannot claim that the information provided to the Court at sentencing was information unknown to him at the time that he entered his guilty plea. By way of discovery letter dated March 4, 2003, Montegio was provided with photocopies of two photographs of the money and boxes seized from 53 Fales Street, Central Falls. By way of discovery letter dated March 18, 2003, Montegio was provided with copies of intercepted conversations, including conversations among Montegio, Maria Benavides and Jessica Olivares, who lived at 53 Fales Street. By way of discovery letter dated March 27, 2003, Montegio was advised that Edward Downing would testify to the results of his fingerprint analysis. By way of discovery letter dated June 10, 2003, Montegio was provided with Mr. Downing's report showing that a latent fingerprint belonging to Montegio had been lifted

[4] Of note is the fact that the Casey case cited by Montegio expressly differentiates between § 1B1.2 and the relevant conduct section, 1B1.3.

from the tape securing one of the Fales Street boxes. Thus, at the time he entered his plea on August 12, 2003, Montegio was well-aware of the Fales Street currency and the evidence connecting him to it.

Further, Montegio's claim that had he known he would be held accountable for sentencing facts not mentioned during the change of plea, he would not have pled guilty but proceeded to trial, rings hollow. The evidence against Montegio was overwhelming. The cash and the cocaine were inside of his apartment, in open view in the kitchen. It was obvious that the three men had just completed re-packaging the cocaine and were in the process of counting the $115,000. When the agents entered the apartment, Montegio fled from the kitchen. He had a gun in his hand. His conversations setting up the transaction were intercepted. Montegio does not offer a viable, credible defense to the charge. Had he proceeded to trial, the government would have filed a sentencing enhancement information, increasing the mandatory minimum term of imprisonment on each of Counts I and II to twenty years. Upon conviction, Montegio most likely would have lost a guidelines decrease for acceptance of responsibility. He would have faced a mandatory minimum term of imprisonment of 300 months - 52 months more than the sentence he received.

In sum, Montegio entered the plea with eyes wide open. He knew the maximum jail term was life imprisonment; knew that

mandatory minimum terms of imprisonment of 15 years applied; knew that the Court could impose a more severe sentence than he might expect; knew that the Court could depart upward from the guidelines range; knew that the plea agreement was not binding on the Court; and knew that his sentence would be based, in part, upon cash seized. Further, all of these things and more were spelled out in the plea agreement.

Viewed in its entirety, the plea colloquy fully addressed the core concerns of Rule 11. There is no basis upon which the Court should declare Montegio's plea was involuntarily made.

5. The quantity of cocaine calculated under the guidelines.

Montegio argues that the Court erred in holding him responsible for at least 15 kilograms, but less than 50 kilograms, of cocaine. As in previous arguments, Montegio references the "stipulated facts," an upward departure, and the Court's acceptance of the plea agreement and of his plea to the offense charged.

Errors in the application of the guidelines are generally not cognizable in a collateral attack. Knight v. United States, supra. This ends the consideration of this issue, in that Montegio has not alleged error by his counsel. However, out of an abundance of caution, the government will proceed to address this issue.

The government briefly restates several points made above. This case does not involve a stipulation of facts. There is no stipulation of facts attached to the plea agreement or filed with the Court. This case does not involve an upward departure. The Court applied the relevant conduct guideline and made adjustments to the offense level for acceptance of responsibility and role in the offense. Further, the plea agreement advised Montegio that his sentence would be based upon the cocaine and the cash seized.

Most importantly, this Court correctly determined the guideline range. For Counts I and II of the indictment, the Court used USSG § 2D1.1, the correct guideline for the offenses of conviction (21 U.S.C. §§ 841(a) and 846). See, USSG § 2D1.1, Comment. Stat. Prov. The selection of this guideline conformed to USSG § 1B1.2.[5] The Court then calculated the amount of cocaine applicable to Montegio by applying the relevant conduct guideline. USSG § 1B1.3. The Court added the $198,700 seized from Fales Street to the $115,000 seized from 45 Claremont Street, arriving at a total figure of $313,700. Dividing this figure by the cost Montegio was paying for a kilogram of cocaine ($22,000), the Court found that the cash was the equivalent of 14.259 kilograms of cocaine. Adding this quantity to the 8.954

[5] Directing the Court to apply the guideline for the offense of conviction unless a more serious offense is stipulated.

kilograms of cocaine seized from 45 Claremont Street, the resulting figure was 23.213 kilograms.

The use of relevant conduct, as well as the conversion of cash to a quantity of controlled substance, is well-rooted in First Circuit case law. See, United States v. Watts, 519 U.S. 148 (1997) (acquitted conduct); United States v. Hall, 434 F.3d 42 (1st Cir. 2006) (conversion of cash); United States v. Pho, 433 F.3d 53 (1st Cir. 2006) (conversion of cash); United States v. Sepulveda, 102 F.3d 1313 (1st Cir. 1996) (conversion of cash); United States v. Campbell, 61 F.3d 976 (1st Cir. 1995) (inclusion of negative mixtures in P2P prosecution); United States v. Tejada-Beltran, 50 F.3d 105 (1st Cir. 1995) (relevant conduct includes counts of conviction, dismissed charges and uncharged acts); United States v. Gerante, 891 F.2d 364 (1st Cir. 1989) (conversion of cash).

Further, the connection between Montegio and the Fales Street cash was overwhelming. The Court was provided with the relevant telephone calls among Montegio, Benavides and Olivares, transcripts of those telephone conversations, the amount of cash seized from Fales Street, and the agreement that a latent fingerprint belonging to Montegio was found on the tape securing one of the Fales Street boxes containing the cash.

There was no error. This claim should be denied.

6. The role adjustment

Montegio argues that the Court erred in adjusting his guidelines offense level upward by two-levels for role in the offense. As he has throughout his memorandum, Montegio claims this adjustment itself violated the plea agreement; that the prosecutor violated the plea agreement in advocating for the adjustment; and that the absence of a role adjustment in the plea agreement was an inducement for him to plead guilty, and he would not have entered a plea otherwise.

As previously stated, errors in the application of the guidelines are generally not cognizable in a collateral attack. Knight v. United States, supra. However, out of an abundance of caution, the government will proceed to address this issue.

There is no violation of the plea agreement. The plea agreement is silent as to role in the offense. Certainly, the plea agreement does not prohibit such an adjustment, nor does it allow Montegio to withdraw his plea should such an adjustment be made. In fact, any reading of the plea agreement allows the Court to make such an adjustment. Montegio understood that all sentencing decisions were to made by the Court, including all guidelines applications and the sentence imposed. The Court could impose any sentence deemed appropriate up to the statutory maximums. Montegio understood that even if the Court's guidelines determinations and sentence were different from what

he expected, he would not be allowed to withdraw his plea of guilty. (P/A, ¶ 9). Montegio agreed that, except for the plea agreement terms, no other promises or inducements had been made concerning the plea. (P/A, ¶ 12). At his change of plea, Montegio agreed that the plea agreement was not biding on the Court. (T. 8/11/03, pp. 5, 7-8). He further acknowledge that the Court could reject the plea agreement recommendations and impose a sentence more severe than Montegio anticipated. Further, Montegio understood that in such an event, he would be unable to withdraw his plea. (T. 8/11/03, p. 8). Montegio also understood that guidelines estimates by the government or by Montegio's attorney might differ from the final calculations. (T. 8/11/03, p. 11). There is no plea agreement violation.

There is no breach of the plea agreement by the government. In addition to the arguments made in the preceding paragraph, Montegio acknowledged and understood that, except for paragraphs 2 and 3 of the plea agreement, he and the government had no agreement concerning the application of the guidelines. (P/A, ¶ 8). Paragraphs 2 and 3 made no mention of a role adjustment. The government was free to advocate for a role in the offense adjustment. Further, paragraph 7 reserved to the government the right to answer any questions by the Court.

With regard to Montegio's argument that the absence of a role in the offense adjustment was an inducement to plead guilty,

such a claim is flatly contradicted by his plea agreement and his plea colloquy made under penalty of perjury. Montegio stated all of the promises made to him were included in the plea agreement (T. 8/11/03, pp. 5, 7-8; P/A, ¶ 12). His contention is a transparent attempt to satisfy the prejudice prong which he cannot otherwise satisfy. This ground should be rejected.

7. The Constitutional Objection and United States v. Booker

Montegio argues that his sentence is based, in part, upon factors which were found by the Court utilizing a lesser standard than "beyond a reasonable doubt." He grounds his claim in United States v. Booker, supra.

The Booker rule cannot be invoked until such time as the Supreme Court holds that it is retroactively applicable. Cirilo-Munoz v. United States, 404 F.3d 527 (1st Cir. 2005); Munoz v. United States, 331 F.3d 151, 153 (1st Cir. 2003). Other Circuits agree. United States v. Hernandez, 436 F.3d 851, 855 (8th Cir. 2006); Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005). The Supreme Court has made no move in this direction. This ground should be denied.

VI. CONCLUSION

The United States therefore requests that the petitioner's motion be denied and dismissed.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Kenneth P. Madden
First Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of May 2006, I served a copy of the within Government's Response to Defendant's Motion, ordinary mail, postage prepaid, to:

Shawn Montegio
Reg. No. 05264-070
FCC Medium, B-1
P.O. Box 1032
Coleman, FL 33521-1032