UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - - -
```
SHAWN MONTEGIO             :
                           :
     v.                    :    C.A. No. 06 - 150 S
                           :
UNITED STATES OF AMERICA   :
                           :
```
- - - - - - - - - - - - - - - - -

**MEMORANDUM AND ORDER**

William E. Smith, United States District Judge

Shawn Montegio ("Montegio") filed a motion to vacate, set aside and/or correct sentence pursuant to 28 U.S.C. § 2255. For the reasons hereinafter stated, Montegio's motion is DENIED.

Background

On August 11, 2003, pursuant to a written Plea Agreement, Shawn Montegio pled guilty to a four count indictment. Count One charged conspiracy to distribute and to possess with intent to distribute over five kilograms of cocaine in violation of 21 U.S.C. § 846. Count Two charged possession with intent to distribute over five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A). Count Three charged possession of a firearm as a previously convicted felon in violation of 18 U.S.C. § 922(g). Count Four charged possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c).

The U.S. Probation Office prepared a pre-sentence report (PSR), calculating a guideline range based upon 11.7444 kilograms

of cocaine and the conversion of $313,700 in cash to 14.259 kilograms of cocaine. The PSR determined that the base offense level was 34 with reduction of two levels for acceptance of responsibility, resulting in a net offense level of 32. With a criminal history category of III, the corresponding sentencing range was 151-188 months plus a minimum consecutive sentence of sixty months.

On October 31, 2003, the Court advised counsel that it wished to hear from counsel on the applicability of a possible four-point enhancement due to Montegio's role in the offense. Both the Government and defense counsel sought and received additional time to submit a memorandum of law.

In January 2004, the probation office produced a revised PSR. The revised PSR recommended a four-level increase for Montegio's role in the offense, raising the net offense level to 36. With a criminal history category of III and an offense level of 36, this resulted in a sentencing range of 253-293 months plus a minimum consecutive sentence of sixty months.

On July 12, 2004, the Court ordered the parties to brief eight specific questions concerning the applicability of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), then recently decided. The applicability of <u>Blakely</u> became moot when the Supreme Court decided <u>United States v. Booker</u>, 543 U.S. 220 (2005), on January 12, 2005.

On April 4, 2005, the Court heard arguments as to what guideline range applied and on various objections to the revised PSR. On April 8, 2005, the Court sentenced Montegio, finding that a two-level increase for his role in the offense was appropriate, resulting in a net offense level of 34. With a criminal history category of III, the applicable guideline range was 188-235 months. The Court sentenced Montegio to 188 months imprisonment plus a sixty month consecutive sentence for a total of 248 months imprisonment. The Court also imposed five years supervised release and a $400 special assessment. Montegio did not file an appeal. The instant motion pursuant to 28 U.S.C. § 2255 was timely filed on April 3, 2006.

### The § 2255 Motion

In his Section 2255 motion, Montegio asserts the following claims:

1. Ineffective assistance of counsel due to counsel's failure to file an appeal;

2. Ineffective assistance of counsel because counsel failed to negotiate a conditional plea;

3. The Government breached the Plea Agreement;

4. The plea was not voluntary;

5. The District Court erred when it calculated the guideline range;

6. The guideline adjustment for Montegio's role in the offense violated the Plea Agreement; and

7. The sentence violated <u>United States v. Booker</u>, 543 U.S. 220 (2005).

3

Analysis

Title 28, United State Code Section 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 ¶ 1.

Generally, the grounds justifying relief under 28 U.S.C. § 2255 are limited. A court may grant such relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law. United States v. Addonizio, 442 U.S. 178, 184-185 (1979). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." Id. at 185 (internal quotation marks omitted).

Moreover, a motion under 2255 is not a substitute for direct appeal. United States v. Frady, 456 U.S. 152, 165 (1982). A movant is procedurally precluded from obtaining § 2255 review of claims not raised on direct appeal absent a showing of both "cause" and "prejudice" or alternatively, that he is "actually innocent" of the offense for which he was convicted. Bousley v. United States,

523 U.S. 614, 622 (1998). However, claims of ineffective assistance of counsel are not subject to this procedural hurdle. Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

A. Ineffective Assistance of Counsel Claims

Montegio first contends that his trial counsel was ineffective. Under the two part test in Strickland v. Washington, 466 U.S. 668 (1984), to demonstrate that counsel did not provide reasonably effective legal assistance, a defendant must show (1) that counsel's representation "fell below an objective standard of reasonableness," see id. at 688, and (2) that counsel's deficient performance prejudiced the defendant, see id. at 694. The defendant bears the burden of identifying the specific acts or omissions constituting the allegedly deficient performance. Conclusory allegations or factual assertions that are fanciful, unsupported, or contradicted by the record will not suffice. Dure v. United States, 127 F. Supp. 2d 276, 279 (D.R.I. 2001).

When assessing the adequacy of counsel's performance, the Court looks to prevailing professional norms. See Ramirez v. United States, 17 F. Supp. 2d 63, 66 (D.R.I. 1998). A flawless performance is not required. All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances. Id.

5

...
...

With respect to the second prong of the <u>Strickland</u> standard, the defendant must show prejudice from counsel's performance. <u>Strickland</u>, 466 U.S. at 694. The "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u>

   1.   Failure to File an Appeal

Montegio first claims that counsel was ineffective because counsel failed to file an appeal. In <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000), the Supreme Court applied the <u>Strickland</u> test to a claim that counsel was constitutionally ineffective for failing to file a notice of appeal. Under <u>Roe</u>, a defendant must show "deficient conduct" as announced in <u>Strickland</u> with a modified version of the prejudice component: a defendant must demonstrate "a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." <u>Id.</u> at 484.

A lawyer who disregards specific instructions from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable. <u>Id.</u> at 477-78. "This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." <u>Id.</u> at 477. Counsel's failure to do so cannot be considered a strategic decision. <u>Id.</u>

To determine whether there is "deficient conduct" when no clear instruction is given to counsel to file an appeal, the Supreme Court instructs courts to inquire "whether counsel in fact consulted with the defendant about an appeal." Id. at 478. Consult, as defined by the Supreme Court, means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. (emphasis added).

The Court conducted an evidentiary hearing on this claim. At the hearing, Montegio and his trial counsel, Attorney John Bevilacqua, testified. After listening to the two witnesses and observing them testify, the Court credits the testimony of Attorney Bevilacqua. To the extent that Montegio's testimony is inconsistent with Attorney Bevilacqua's, it is rejected.

The testimony demonstrated that either immediately before, or immediately after sentencing, Attorney Bevilacqua and Montegio met in the Courthouse cell-block and initially discussed filing an appeal. Attorney Bevilaqua testified that further discussions occurred following the imposition of the sentence at the Wyatt detention facility.

7

Attorney Bevilacqua testified that when he consulted with Montegio at Wyatt, he advised Montegio that any potential merit of an appeal was outweighed by significant pitfalls and he recommended to Montegio that he not file an appeal. Attorney Bevilacqua testified that, at that time, he received no express instruction to file an appeal and, following their meeting, Montegio never directed Bevilacqua to file an appeal.

Where counsel consults with the defendant, as here, the question of "deficient performance" turns on whether counsel failed to follow the defendant's express instructions with respect to an appeal. Id. at 478. Here, Montegio never provided an express instruction to Attorney Bevilacqua. Therefore, Attorney Bevilacqua's conduct was not "deficient" and this claim fails.

2. Failure to Pursue a Conditional Plea

Next, Montegio asserts that counsel was ineffective because counsel failed to negotiate a conditional Plea Agreement. See Fed. R. Cr. P. 11(a)(2).[1] Montegio asserts that he sought to enter into a conditional plea because he wanted to appeal adverse pretrial rulings. Montegio's claim, however, is contradicted by the

---

[1] Fed. R. Cr. P. 11(a) provides:

> **(2) Conditional Plea.** With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pre-trial motion. A defendant who prevails on appeal may then withdraw the plea.

8

undisputed testimony elicited at the hearing. Attorney Bevilacqua testified that he did, in fact, attempt to negotiate a conditional plea. However, both the Government and the Court refused his request.[2] Indeed, this Court has never accepted a conditional plea, and as a matter of local practice, the judges of this District do not accept them. Therefore, counsel was not deficient and this claim fails.

B.   Breach of the Plea Agreement

Next, Montegio contends that the Government breached the Plea Agreement because it utilized facts at sentencing that were not stipulated to at the plea colloquy. Specifically, Montegio contends that the Government advanced a higher offense level based on the currency seized in violation of the Plea Agreement. Montegio's contention is without merit.

Plea agreements are interpreted under principles of contract law. United States v. Clark, 55 F.3d 9, 12 (1st Cir. 1995). Consistent with contract law principles, the Court looks to language of the document, focusing squarely within its four corners. United States v. Hogan, 862 F.2d 386, 388 (1st Cir. 1988). "If the defendant lives up to his end of the bargain, the government is bound to its promises. On the other hand, if the

---

[2] A defendant does not have a right to enter into a conditional plea. United States v. Bell, 966 F.2d 914, 916 (5th Cir. 1992); United States v. Muldoon, 931 F.2d 282, 288 (4th Cir. 1991); United States v. Davis, 900 F.2d 1524, 1526-28 (10th Cir. 1990).

defendant fails to fulfill his promises, the government is released from its agreement . . . ." United States v. Gonzalez-Sanchez, 825 F.2d 572, 578 (1st Cir. 1987). "[A] defendant's subjective expectations as to how a plea agreement will redound to his benefit are enforceable, if at all, only to the extent that they are objectively reasonable." United States v. Garcia, 954 F.2d 12, 17 (1st Cir. 1992).

Here, the Plea Agreement contains no provision which provides that the currency seized would not be included in Montegio's sentencing calculus. To the contrary, the Plea Agreement specifically provides that Montegio's Sentencing Guideline range would be determined, in part, upon the quantity of cocaine involved in his case and seized United States currency. See Plea Agreement, filed Aug. 6, 2003, Dkt # 56, ¶ 3, accepted by Court on Aug. 11, 2003. Any expectancy that Montegio's sentence would be imposed without reference to the currency seized is objectively unreasonable.

Moreover, the Government and Montegio made no agreement concerning the application of the Sentencing Guidelines. See Plea Agreement, ¶ 8. Rather, the Plea Agreement specifically instructed Montegio that the Court would determine the appropriate sentence based upon the factors that it determines are relevant. Id. at ¶ 9. Thus, Montegio's claim that the Government breached the Plea Agreement is without merit.

C.  Voluntariness of the Plea

Montegio next asserts that since the prosecution asserted additional facts relating to cocaine and currency seized at his sentencing, his guilty plea became involuntary. This assertion is belied by the record in this case.

In a collateral attack upon a guilty plea, the defendant must show that the errors resulted in a total miscarriage of justice or in a proceeding so tainted as to be inconsistent with the basic requirements of fundamental fairness. Sparfven v. United States, 577 F. Supp. 1430, 1432-33 (D.R.I. 1984). A defendant's plea must be knowing, voluntary and intelligent, and the Rule 11 colloquy must address three core concerns: (1) the absence of coercion; (2) the defendant's understanding of the charges against him; and (3) the defendant's knowledge of the consequence of his plea of guilty. United States v. Bierd, 217 F.3d 15, 18-19 (1st Cir. 2000)

During the change of plea hearing held on August 11, 2003, Montegio confirmed that no promises or assurances had been made to him, other than those explicitly stated in the written Plea Agreement, and that no one had forced him to plead guilty. See Change of Plea Transcript, Aug. 11, 2003, pp. 7-8. The Court explained the charges and the elements that the Government would have had to prove. Id. at 4-7, 14-20. Montegio was advised of the penalties for each offense. Id. at 8-10. He was advised of the operation of the sentencing guidelines. Id. at pp. 10-12. More

importantly, the Court advised Montegio that the terms of the Plea Agreement were not binding on the Court and that the Court could impose a sentence more severe than he anticipated. Id. at 8. Furthermore, all of these items were set forth in the Plea Agreement that Montegio signed. See Plea Agreement, Dkt # 56, pp. 1-7.

Montegio now asserts that the Government advanced, and the Court utilized at sentencing, information not spelled out in the Plea Agreement. However, this Court warned the Plaintiff during the change of plea hearing that (1) it was not bound by the Plea Agreement, and (2) the Court could impose a sentence more severe than he or his counsel anticipated. Despite these warnings, Montegio proceeded to plead guilty. He may not now challenge his plea because the sentence he recieved is not what he anticipated. See United States v. Torres-Rosa, 209 F.3d 4, 9 (1st Cir. 2000) ("A defendant's miscalculation-even a gross miscalculation-anent the likely length of his sentence does not render a guilty plea unknowing, involuntary, or unintelligent in any legally cognizable sense."). Accordingly, Montegio's claim that his plea was not voluntary is without merit.

D.   Guideline Error and Montegio's Role in Offense

Next, Montegio claims that the Court erred when it calculated the appropriate Sentencing Guideline range, and that the Court's determination that he was leader/organizer violated the Plea

12

Agreement. However, errors in the application of the Sentencing Guidelines generally are not cognizable in Section 2255 motions. <u>Knight v. United States</u>, 37 F.3d 769, 774 (1st Cir. 1994). Notwithstanding the procedural bar to these two claims, the Court will address the merits.

First, Montegio asserts that the Court should not have converted the currency seized to cocaine when calculating his sentencing guideline range. However, the Sentencing Guidelines and case law permit the conversion of cash to cocaine for sentencing purposes. <u>See</u> U.S.S.G. § 1B1.3(a)(2); <u>United States v. Gerante</u>, 891 F.2d 364, 369 (1st Cir. 1989) (conversion of cash to cocaine appropriate). Moreover, the Plea Agreement permitted the use of the currency seized when calculating the appropriate guideline range. <u>See</u> Plea Agreement, ¶ 3.

Second, Montegio claims that the Court's determination during sentencing that he was leader/organizer violated the Plea Agreement. This claim is flatly contradicted by the record. The Plea Agreement explicitly provided that the Court was not bound by the Government's sentencing recommendations and that the Court could impose any sentence up to and including the statutory maximum. <u>See</u> Plea Agreement, ¶ 9. The Plea Agreement makes clear that sentencing decisions were to be made by the Court, including guideline applications and the actual sentence imposed.

13

To the extent that Montegio claims that the absence of a role in the offense adjustment in the Plea Agreement was an inducement for him to plead guilty, this claim is summarily rejected. As already mentioned, the Plea Agreement makes clear that the Court alone determines the appropriate sentence. <u>See</u> Plea Agreement ¶ 12; <u>see also</u> Transcript of Plea Agreement Hearing, August 11, 2003, pp. 7-8.

E.  The <u>Booker</u> claim

Finally, Montegio claims that his sentence violates <u>Booker</u>, 543 U.S. 220, because the Court utilized facts at sentencing not admitted to during the plea colloquy. This claim is without merit. Judicial fact-finding is entirely permissible during sentencing both pre-<u>Booker</u> and post-<u>Booker</u>. <u>United States v. Antonakopoulos</u>, 399 F.3d 68, 75 (1st Cir. 2005); <u>Cirilo-Munoz v. United States</u>, 404 F.3d 527, 533 (1st Cir. 2005).

## Conclusion

Accordingly, Montegio's motion to vacate, set aside and/or correct sentence is DENIED.

_____
William E. Smith
United States District Judge
Date: 12/17/07