IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CIVIL ACTION: 06-150S

SHAWN MONTEGIO,

Petitioner/Defendant,

-v- Criminal No. 1:03-CR-00005-S-1
1:03-MJ-00018

UNITED STATES OF AMERICA,

Respondent/Plaintiff.

_______________________________________/

MOTION TO CHALLENGE HABEAS CORPUS
ETIOLOGY OF JUDGEMENT
PURSUANT TO CIVIL RULE of PROCEDURE 60(b)
and RODWELL v. PEPE, 324 F.3d 66 (1st Cir. 2003)

**NOW COMES,** Shawn Montegio, (hereinafter Montegio), a pro se litigant, who prays this Honorable Court will consider newly discovered factual predicates that challenge the integrity and procurement of this Court's habeas judgement denying relief from ineffective counsel's failure to file an appellate notice.

It is well settled circuit law that a motion for relief from judgement under Fed. R. Civ. P. 60(b) must be made within a reasonable time for reasons stated in Clauses (1), (2) and (3), but not more than one year after the judgement was rendered by the district court. A "one size fits all" taxonomy should not be applied for Rule 60(b) motions in the habeas context. The courts must proceed in a case by case inquiry and examine the factual predicates set forth in support of the motion. See e.g.,

**Rodwell v. Pepe**, 324 F.3d 66 (1st Cir. 2003).

Montegio also avers that the principle of pro se incarcerated litigants should generally be given the greater consideration enunciated in **Haines v. Kerner**, 404 U.S. 519 (1972).

Montegio seeks to vacate the judgement denying habeas relief for ineffective counsel's failure to file appellate notice under the provisions of Rule 60(b).

Montegio will demonstrate his entitlement results from facts that: (1) his attorney, John L. Bevilacqua, knowingly submitted a sworn false affadavit, in support of his evidentiary hearing testimony; (2) Bevilacqua uttered perjurious statements while under oath during Montegio's §2255 evidentiary hearing; (3) AUSA Kenneth P. Madden, presented Bevilacqua as an honest reputable attorney witness, albeit knowing Bevilacqua was under investigation for civil and/or criminal offenses that included fraud and perjury; (4) the district court gave great weight to Bevilacqua's testimony that, after sentencing, he visited Montegio at the Wyatt Detention Center where Montegio 'never expressed' an instruction to Bevilacqua to file a district appeal notice; (5) The Wyatt Detention Center's official visit records clearly reveal Bevilacqua never visited Montegio after sentencing, thereby contradicting his sworn testimony; (6) and, during a two month period after sentencing and while awaiting transfer to FCC Coleman, Florida, Montegio encountered a number of Wyatt federal inmates standing-by to testify against Bevilacqua for fraud, perjury and extortion violations by the Rhode Island U.S. Attorney's Office.

Montegio's factual predicates deal primarily with some irregularity or

procedural defect in the procurement of the judgement denying habeas relief. This is the classic function of a Rule 60(b) motion. See e.g., **Teamsters Chauffeurs, Warehousemen and Helpers Union v. Superline Transport Company**, 953 F.2d 19-20 (1st Cir 1992). Montegio's motion should be treated within the ambit of Rule 60(b).

Moreover, the post judgement discovery by a defeated litigant of evidence establishing, clearly and convincingly that the prevailing party's witness gave false testimony which likely affected the results provides a basis for vacating the judgement under Rule 60(b). E.g., 11 Charles A. Wright, et al., Federal Practice and Procedure §§2860-61.

**RULE 60(b) ANALYSIS**

In Rodwell v. Pepe, supra, the First Circuit relied upon **Rodriquez v. Mitchell**, 252 F.3d 191 (2nd Cir. 2001), "to determine that a Rule 60(b) motion does not seek the relief requested by a habeas petition, but, rather, seeks only to vacate the district court's judgement dismissing the habeas petition." Id. That is "merely a step along the way" to habeas relief. Id. at 199.

More importantly, applying this holding to Montegio's Rule 60(b) motion, Montegio does not challenge nor raise any constitutional concerns that could be deemed a second or successive petition within the meaning of 28 U.S.C. §2244.

Montegio's motion is based on 60(b)(2)(newly discovered evidence) and 60(b)(3)(fraud). The first question to be addressed is whether any of these provisions of Rule 60(b) apply to the facts of this case.

The newly discovered evidence provision of Rule 60(b)(2) is aimed at correcting erroneous judgements stemming from Bevilacqua's evidentiary testimony. Montegio will demonstrate that the newly discovered evidence provides for a basis for a new determination of claim one under 60(b)(2) that satisfys five conditions:

(1) the evidence was newly discovered since the evidentiary hearing;

(2) Montegio was diligent in discovering the new evidence;

(3) the newly discovered evidence is not cumulative;

(4) the newly discovered evidence is material;

(5) that a redetermination with the newly discovered would probably produce a different result for claim One, see generally, **Lepore v. Vidockler**, 792 F.3d 272 (1st Cir. 1986); and the new evidence "would have probably changed the outcome", **Hoult v. Hoult**, 57 F.3d 1 (1st Cir. 1995).

More significantly, fraud perpetrated in the course of litigation interferes with the process of adjudication, and is the kind of litigation-related fraud that principally concerns Rule 60(b)(3)'s provision. Once fraud is proven, the judgement must be set aside. **Tiller v. Baghdady**, 294 F.3d 277, 280 (1st Cir. 2002).

## THE EVIDENTIARY HEARING TESTIMONY

Montegio employs the judicial notice provisions of 28 U.S.C. §201 with respect to the court's transcripts and it's determination of the testimony that formed the basis for the court's denial ruling. Montegio testified that immediately after sentencing, Bevilacqua arranged an attorney/client

meeting in a conference room within the courthouse in the U.S. Marshall's holding cell area. (Evid. trans. at page 19 of Exhibit One.) Montegio instructed Bevilacqua at the time to go forward with the appeal...to appeal the enhancement rule and the inclusion of the additional funds that increased Montegio's sentence. Bevilacqua responded, "he would do so." (See Exhibit One at page 20.) Moreover, at page 22:

> "Mr. Bevilacqua knew I wanted to appeal my sentence. He was aware of that. I made that very clear to him when I met him downstairs."

Montegio returned to the Wyatt Detention Center where he remained for a seven to eight week period, awaiting transfer to FCC Coleman, Florida. Montegio testified that during the seven to eight week period while awaiting transfer, Bevilacqua never visited Montegio in the Wyatt Detention Center:

| | | |
|---|---|---|
| Mr. Madden:<br>Page 44<br>lines 3 to 8 | Q. | During the seven to eight week period of time, Mr. Bevilacqua never came out to the Wyatt Detention Center? |
| | A. | Not that I recall. No! |

Bevilacqua testified as follows:

| | | |
|---|---|---|
| Mr. Madden<br>Page 59<br>Lines 19 to 21 | Q. | Now, after Mr. Montegio was sentenced did you have any discussions with Mr. Montegio at all regarding a appeal? |
| Line 22 | | I recall two discussion. |
| | | Can you describe when the first discussion took place? |

| | | |
|---|---|---|
| At page 60 | A. | I believe the first discussion was right after sentencing...he wanted to know exactly what his chances would be on appeal. So, I went out to the **(Wyatt) Detention Center** shortly thereafter, sat and discussed with him...I did tell that I would go over what the judge had decided from my notes and I would give him an answer of what my opinion is on that. |
| Cross - McCormick: Page 70, Lines 5 to 7 | Q. | Now, you said that you met with him at the **Wyatt Center** after that date. Do you have a clear recollection of that? |
| Line 8 | A. | I have a clear recollection of meeting with him at the **Wyatt Center**. No question about that. |
| Page 71 Lines 3 to 4 | | I specifically remember the meeting at the **Wyatt Detention Center**, which was right after sentencing. |
| Page 73 Lines 14 to 16 | Q. | ...do you have a recollection at all of a meeting with him at the cellblock here and having the issue of appeal come up? |
| Line 17 | A. | **No. I don't have a recollection of that at all.** |
| Line 22 | A. | I don't usually discuss that immediately after the sentence. I usually go to the **Wyatt Detention Center** to discuss that because I have more time. |
| Page 75 Lines 4 to 5 | Q. | The discussion you had with him, that was at the **Wyatt Center**, is that correct? |
| Line 6 | A. | **Right**. |
| Page 76 Lines 7 to 8 | Q. | How many times were you at the Wyatt Center when you discussed the issue with Mr. Montegio? |
| Line 9 | A. | I think it was that one time. |

| | |
|---|---|
| Line 24 | Q. Is that what you told him that day at the **Wyatt Center**? |
| Page 77<br>Line 1 | A. I don't recall exactly. |
| Line 6 | Q. So, you gave an off-the-cuff opinion at first? |
| Line 7 | A. At the Wyatt Center, yes. |
| Page 78<br>Lines 14 to 15 | Q. So, the issue on his appeal when you left the Wyatt Center, that issue was up in the air? |
| Line 18 | A. I didn't have any direction from him. |
| Page 80, Line 22 | Q. So he knew he had ten days? |
| Line 23 | A. He certainly did. |

The evidentiary transcripts clearly reveal that on eight separate occasions, Bevilacqua was either asked about his visit to the Wyatt Center after Montegio's sentencing or responded that he was at the Wyatt Center to visit with Montegio, sat with him, and discussed the possible outcome of the appeal.

The district court gave Bevilacqua's testimony greater weight based on Bevilacqua's response on eight different occasions that Montegio never gave Bevilacqua instruction to file an appeal notice during the attorney/client visit at the Wyatt Center after sentencing. The district court credited Bevilacqua's testimony and rejected Montegio's testimony as inconsistent with Bevilacqua's. The court accepted the truthfulness that, Bevilacqua consulted with Montegio at the Wyatt Center where Bevilacqua never received an expressed instruction to file an appeal, and following the Wyatt

meeting, Montegio never directed Bevilacqua to file an appeal. (See Exhibit Two: Judgement Denial at pages 7 and 8.)

**The Wyatt Center Visiting Records**

After the evidentiary hearing and prior to Montegio's transfer to his designated institution of incarceration, Montegio obtained his Wyatt Detention Center visiting records. The official records clearly reveal, Bevilacqua never visited Montegio at the Wyatt Center after his sentencing on 04-08-05, DE. 126. Although, Bevilacqua clearly remembered visiting Montegio at the Wyatt Center after sentencing and testified under oath and submitted a sworn affidavit to the same effect is not supported by the record. The official visiting records clearly contradict Bevilacqua's testimony. (See Exhibit Three.) The question becomes: Whether Bevilacqua proffered perjurious testimony and a false affidavit. More importantly, whether under Rule 60(b) and circuit precedent, Montegio's factual predicates deal primarily with a procedural defect in the procurement of the judgement denying habeas relief.

**Bevilacqua's Civil/Criminal Conduct**

After the evidentiary hearing and while still at the Wyatt Center, Montegio met federal prisoner, Miguel Flaquer, who was awaiting sentencing in Bridgeport, Connecticut. See **U.S. v. Flaquer**, Criminal No. 3:05-cr-00059 (AHN). On March 13, 2008, Flaquer had filed a pro se complaint in the District of Rhode Island against attorney, John Bevilacqua, CA-08-95-ML. That action was based on the following:

While Mr. Flaquer was incarcerated at the Wyatt Detention Facility in Central Falls, Rhode Island, he was approached by a woman named Lisa Torres. Ms. Torres acted in John Bevilacqua's behalf, as his legal assistant, and informed Flaquer she had an ongoing relationship with law enforcement officers who would credit Flaquer with the arrest of others that would support a reduction in his sentence. Ms. Torres convinced Mr. FLaquer that, if he paid her $50,000.00, she would arrange for him to obtain a downward departure based upon his cooperation with the government, and a reduced sentence at the time of sentencing. Included in this arrangement was Mr. Flaquer's retention of Rhode Island attorney, John Bevilacqua. Attorney Bevilacqua would serve as Mr. Flaquer's Rhode Island lawyer, to meet with Mr. Flaquer as needed, and to assist in whatever cooperation efforts were conducted in Rhode Island.

Miguel Flaquer and his family members paid the money requested by Torres. It was expalined to Flaquer's family that Torres and her associates, among other things, would "set up" other offenders and arrange for Flaquer to get credit for the information. However, after the money was turned over, no action was ever taken by Torres, and despite repeated requests by Flaquer and his family members, none of the funds provided were returned. Included in the funds turned over to Torres and Bevilacqua was five thousand dollars from Flaquer's counsel, John T. Walkley, client's funds account, paid to Bevilacqua, purportedly for Bevilacqua's provision of Flaquer's legal services in Rhode Island. (See Exhibit Four: Flaquer's Sentencing Memorandum). On 01-04-07, Torres was arrested with others, including Bevilacqua's attorney brother, for similar

scams. Indictment No. 1:07-CR-10008-NMG-4.

Flaquer's civil suit against Bevilacqua and the arrest of Torres, certainly put the Office of the U.S. Attorney in Rhode Island on notice that Bevilacqua's integrity had been compromised and his credibility ...questionable. Moreover, Montegio met with and conversed with other Wyatt inmates that were awaiting to testify against Bevilacqua for similar conduct in their cases. The U.S. Attorney's Office, nonetheless, failed to notify this Court or Montegio of the ongoing Bevilacqua investigation, and portrayed him as an honest, upright member of the legal profession.

## CONCLUSION

Montegio has conclusively demonstrated that his Rule 60(b) motion and evidence has merit, and that this Honorable Court should set aside it's past judgement. The newly discovered evidence would have probably changed the outcome and the failure to disclose permits relief from the judgement for fraud, misrepresentation, or misconduct of the adverse party. This Court should consider anew whether Bevilacqua was ineffective for failing to file Montegio's direct appeal after Bevilacqua was instructed to do so.

Respectfully submitted,

Shawn J Montegio

Shawn J. Montegio
Reg. #05264-040
FCC-Medium (B-1)
PO Box 1032
Coleman, FL 33521-1032

DATE: August 20, 2008